UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 8:01-cr-70-T-23TBM
 8:05-cv-580-T-23TBM

PRESTON BERNARD THOMAS

_____/

UNITED STATES OF AMERICA

v.  Case No. 8:01-cr-70-T-23TBM
 8:05-cv-380-T-23TBM

TODDRICK ONTERIO FRANKLIN,

_____/

**O R D E R**

A mistrial was granted at the first trial of defendants Franklin and Thomas, a trial in which the jury found the defendants not guilty of count three of the first superseding indictment and was unable to reach a verdict on the remaining counts. Subsequently, in a trial based on a second superseding indictment, a jury found both Thomas and Franklin guilty of counts one and two, Thomas guilty of count eight, and Franklin guilty of counts four and five.[1] Thomas is serving a sentence of life and Franklin is serving three hundred months. The convictions and sentences were affirmed (Doc. 241). Motions for new trial were denied (Doc. 237 and 257). Each defendant filed a motion to

---

[1] The second superseding indictment charged Thomas and Franklin with both conspiring (count one) and possessing (count two) fifty grams or more of cocaine with the intent to distribute and maintaining a place (count eight) for the purpose of manufacturing, distributing, and using cocaine, and Franklin with possessing (count four) a firearm in furtherance of a drug trafficking crime and possessing (count five) a firearm by a previously convicted felon.

vacate pursuant to 28 U.S.C. § 2255.[2] The United States admits that both motions are timely. See response at 5 (Doc. 4) in 05-cv-580 (Thomas) and response at 8 (Doc. 14) in 05-cv-380 (Franklin).

## **FACTS**[3]

> The relevant facts are straightforward. On November 30, 2003, Jeremiah Johnson, a confidential informant working for the St. Petersburg Police Department ("SPPD"), went to a "crack house" to purchase crack cocaine with $200 in marked currency provided by the SPPD. Johnson went inside the house for about two or three minutes, during which time he purchased about 2.7 grams of crack cocaine from defendant Preston Thomas. SPPD detectives repeated the process on January 2, 2001, giving Johnson $200 to purchase about 2.8 grams of crack cocaine at the same house. During this second transaction, co-defendant Toddrick Franklin sold Johnson the crack cocaine.
>
> On still another occasion, when Johnson returned to the house and knocked on the door, Franklin came to the window. As Franklin opened the curtain, Johnson saw a group of men, including Thomas, gathered around the kitchen stove. After Franklin opened the door, the small of crack cocaine wafted out, as if the men were cooking powder cocaine. "Cooking" cocaine powder creates a hardened rock form known as "cocaine base" or "crack cocaine." Franklin told Johnson to come back later.
>
> On January 19, 2001, Johnson reviewed a series of photographs provided by the police and identified Thomas and Franklin as the individuals who had sold him crack cocaine on November 30 and January 2. On the same day, Johnson entered the house for a few minutes and purchased about 3.2 grams of crack cocaine from Thomas and Franklin.

---

[2] Franklin's original motion to vacate alleged six grounds for relief, which were supported in a supporting memorandum, and attempted to incorporate by reference the grounds for relief Thomas asserted in his motion to vacate. In response to an order (Doc. 3), Franklin filed an amended motion to vacate asserting all of his grounds for relief without incorporating Thomas's grounds. However, Franklin failed to include the supporting memorandum with the amended motion to vacate. The response (Doc. 14) addresses the arguments contained in the supporting memorandum. Consequently, the supporting memorandum in the original motion to vacate is deemed incorporated into the amended motion to vacate.

[3] This summary of the facts is from the circuit court's decision on the defendants' direct appeal. United States of America v. Toddrick Franklin, No. 03-11109 (December 30, 2003) (Doc. 241).

- 2 -

Later that day, the SPPD detectives executed a search warrant at the house. During the thirty-minute period that preceded the execution of the warrant, four individuals entered the house, stayed inside for a few minutes, then left. A number of vehicles were observed pulling up in front of the house. One vehicle was a red pickup truck driven by Marshall Oliver. Oliver left the truck's motor running and headlights on when he entered the house. The detectives subsequently discovered crack cocaine in the truck.

When the detectives entered the house to execute the warrant, they used a flash-bang device, which produces a bright flash and a loud noise. They discovered Franklin hiding in an upstairs bedroom closet. Detectives testified that they found him with a loaded .22 caliber Jennings handgun in his back pocket.[2]

> [2] At trial, Franklin testified that he did not have a gun in his back pocket.

They also found Thomas and Oliver in the back porch.[3]

> [3] The detectives arrested Thomas, Franklin, and Oliver on state charges. Oliver was convicted on the state charges and was not charged in the federal indictments.

Within arms-length of Thomas, behind the water heater on the porch, the police found a 9-millimeter Ruger semiautomatic pistol loaded with 10 rounds of ammunition. The detectives found several other firearms and ammunition throughout the house.[4]

> [4] The SPPD detectives also found: (1) an assortment of .357 Magnum and 9 millimeter ammunition on the living room mantle; (2) a loaded pistol magazine and other ammunition on the living room mantle; and (3) a Colt .357 revolver loaded with five rounds of ammunition on top of the cushions on a couch in the living room.

Thomas and Franklin both were convicted felons at the time of the search.

Throughout the house, the detectives found large quantities of powder cocaine, crack cocaine, and marijuana, including several bags of powder cocaine in the pocket of a camouflage jacket in a bedroom closet.[5]

> [5] The SPPD detectives found approximately: (1) 7.2 grams of crack cocaine on the floor of the back porch; (2) 22.7 grams of crack cocaine in the kitchen cabinet; (3) 22.8 grams of crack cocaine "in cookie form" in the kitchen cabinet; (4) 21.1 grams of crack cocaine on the kitchen table; (5) 15.2 grams of crack cocaine in the kitchen cabinet; (6) 5.5 [grams] of crack cocaine on the mantle in the living room; and (7) 34.6 grams of crack cocaine inside a tennis shoe in a shoe box in the corner of the living room; (8) 1.2 grams of powder cocaine in the kitchen cabinet; (9) 81.5 grams of marijuana in a denim jacket in a bedroom closet; (10) 21 grams of marijuana in a cardboard box on the kitchen table; and (11) 106.7 grams of marijuana in a shopping bag on the floor in the dining room.

They also discovered drug paraphernalia and other items commonly used to manufacture, distribute, or consume illegal drugs, including: (1) a small metal pipe, containing trace amounts of marijuana, on the mangle in the living room; (2) a police scanner that was plugged in, turned on, and transmitting communications among law enforcement officers outside the house; (3) a police scanner that was turned off and lying on top of a television in a bedroom; (4) two bags containing small bags used to package narcotics in a bedroom; (5) a small electronic scale used to weigh gram and ounce quantities, containing trace amounts of cocaine, on the kitchen table; and (6) a pyrex sauce pot that contained cocaine residue and was charred on the bottom.

Finally, the detectives found the following documents and items connecting Thomas, Franklin, and other individuals to the house or the distribution of illegal drugs, or both: (1) a set of keys, including a key to the front door of the house, Thomas's pocket; (2) approximately $3270 in cash-including the $200 in marked bills that Johnson had used to purchase crack cocaine from Thomas and Franklin earlier in the day-in Thomas's pockets; (3) two dry cleaning receipts in Franklin's name in a closet; and (4) an identification card in Franklin's name in a bedroom.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Both Thomas and Franklin allege that trial and appellate counsel rendered ineffective assistance. Claims of ineffective assistance of counsel are difficult to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."

- 5 -

Strickland v. Washington, 466 U.S. at 690.  Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland v. Washington, 466 U.S. at 690.

Thomas and Franklin must demonstrate that error by counsel prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  Strickland v. Washington, 466 U.S. at 691-92.  To meet this burden, each must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Strickland v. Washington,  466 U.S. at 690-91.  This burden is not met by merely showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done.  We ask
> only whether some reasonable lawyer at the trial could have acted, in the
> circumstances, as defense counsel acted at trial. . . .  We are not
> interested in grading lawyers' performances; we are interested in whether
> the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)). See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

## **CLAIMS BY BOTH THOMAS AND FRANKLIN**

Thomas and Franklin each received an enhanced sentence based on prior felony convictions and each alleges in his motion to vacate that the trial court lacked jurisdiction to impose an enhanced sentence because the United States both failed to file the notice of prior convictions before the second trial[4] and failed to adequately identify the prior convictions.[5] The motions to vacate also allege that both trial and appellate counsel rendered ineffective assistance by failing to raise the jurisdictional claims.[6]

Thomas and Franklin received two trials. Before the first trial the United States filed an "Information and Notice of Prior Convictions" for both Thomas (Doc. 40) and Franklin (Doc. 41) as required by Title 21, United States Code, Section 851(a)(1). The

---

[4] Count one in Thomas's motion to vacate and count seven in Franklin's motion to vacate.

[5] Count three, which was added in a supplement (Doc. 6), in Thomas's motion to vacate and count nine in Franklin's motion to vacate.

[6] Counts two and three in Thomas's motion to vacate and counts eight and ten in Franklin's motion to vacate.

notice identifies each defendant's prior convictions, ten for Thomas[7] and one for Franklin.[8] No similar notice was filed before the second trial.

A second notice was not required. "Once the information [and notice of prior convictions] was filed, it was not necessary that it be refiled for each consecutive trial in the same court." United States v. Williams, 59 F.3d 1180, 1185 (11th Cir. 1995), cert. denied 517 U.S. 1157 (1996). Both Thomas and Franklin unconvincingly attempt to distinguish Williams, arguing that a new notice was required because the second trial was not "in the same court" and because the second trial was based on a new indictment. Both trials were in the "same court" and the same attorney represented each defendant, respectively, at both trials.[9] The second superseding indictment also fails to require a new notice of prior convictions because the purpose of Section 851 was met with the notice provided before the first trial.

---

[7] The notice (Doc. 40) advised Thomas of the following convictions:

> On or about June 29, 2001, the defendant was convicted of three counts of sale of cocaine and three counts of possession of cocaine in violation of the laws and statutes of the State of Florida. Also, on or about November 18, 1996, the defendant was convicted of two offenses of possession of cocaine in violation of the laws and statutes of the State of Florida. On or about October 2, 1995, the defendant was convicted of possession of cocaine in violation of the laws and statutes of the State of Florida. On or about November 10, 1994, the defendant was convicted of possession of cocaine in violation of the laws and statutes of the State of Florida.

[8] The notice (Doc. 41) advised Franklin of the following conviction:

> On or about August 17, 1992, the defendant was convicted of possession of cocaine in violation of the laws and statutes of the State of Florida.

[9] Thomas was represented by Grady Irvin, Esq., and Franklin was represented by Anne Borghetti, Esq.

> There are two purposes for this provision and the subsequent proceedings set forth in section 851. The *first* is to allow the defendant to contest the accuracy of the information. The *second* is to allow defendant to have ample time to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the consequences of a potential guilty verdict.

United States v. Williams, 59 F.3d at 1185. Requiring the United States to file another notice fulfills no purpose.

> The question is whether the information was filed too long before trial, or whether the information must be filed for each trial and retrial. There seems to be no support in the statute, in the cases, or in reason for such a requirement. The established purposes of the filing and service are fully met upon the first filing and service, at least where the case involves the same attorneys, the same court, and the same indictment. The fact that there were different sentencing judges should make no difference.

United States v. Williams, 59 F.3d at 1185-86. Although a senior judge of this district presided over the first trial and the undersigned presided over the second trial, a difference in trial "judges should make no difference." The claim of lack of jurisdiction lacks merit. Consequently, Thomas and Franklin cannot show that trial and appellate counsels' representation was both deficient and prejudicial.

## **FRANKLIN'S SEPARATE CLAIMS**[10]

Franklin's first two grounds challenge the confidential informant's testimony and the prosecution's use of the confidential informant. These claims were raised in Franklin's motion for new trial, which motion was denied with the following findings that are relevant to Franklin's first two grounds.

---

[10] Thomas asserts no separate claims in either his motion to vacate or his supplement.

>The purchases of crack cocaine by Johnson each occurred under close supervision and under nearby observation by law enforcement, who searched Johnson at the scene minutes before the "buys," provided money for the "buys," maintained observation of the premises at all times and of Johnson at every possible time, and again searched Johnson when he returned from the "buys." In sum, several officers on several occasions closely orchestrated "buys" of crack cocaine by Johnson. The execution of the resulting search warrant yielded conclusive evidence of the "crack house" in which Franklin and his confederates operated.
>
>The evidence of Franklin's guilt is plentiful and not dependent on the "credibility" of Johnson. In fact, much of Johnson's testimony—which simply related undisputed events that were observed by law enforcement and that were entirely consistent with the physical proceeds of the search warrant—are not readily susceptible to a credibility attack.

Order at 5 (Doc. 237).

Ground One:

Franklin alleges that both trial and appellate counsel rendered ineffective assistance by failing to challenge "false testimony" by the confidential informant. Franklin also alleges that the United States had a duty to correct the "false testimony."[11] Franklin asserted this claim in a motion for new trial (Doc. 219) but he failed to specify the testimony that he considered was false. The motion for new trial was denied (Doc. 237) and the appeal dismissed (Doc. 242). In his motion to vacate, Franklin specifies the testimony he considers was false: the informant's inconsistent testimony. The confidential informant testified at the first trial that, when he purchased the cocaine, he

---

[11] Franklin forfeited this substantive claim because he could have raised the claim on direct appeal. A claim that a defendant could have raised on direct appeal, but which was not raised, is procedurally defaulted and not reviewable on the merits absent a showing of cause and actual prejudice or a fundamental miscarriage of justice. United States v. Frady, 456 U.S. 152, 166 (1982), Mills v. United States, 36 F.3d 1052, 1055-56 (11th Cir. 1994). To the extent that Franklin relies on ineffective assistance of counsel as "cause" for the default, Franklin cannot show both deficient performance and prejudice.

was greeted at the door by Thomas, whereas at the second trial he testified that he was greeted by Franklin. The United States is correct that, at the second trial, counsel for co-defendant Thomas impeached the informant with the transcript from the first trial. Transcript of Trial Proceedings at 25-28 (Doc. 225). Regarding Franklin's other complaints about instances where counsel should have impeached the confidential informant, deciding what questions to ask on cross-examination is a strategic or tactical decision left to the discretion of counsel. See Dorsey v. Chapman, 262 F.3d 1181 (11th Cir. 2001), cert. denied 535 U.S. 1000 (2002). See also Minton v. Sec'y, Dep't of Corr., 271 Fed. Appx. 916, 918 (11th Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'") (quoting Wiggins v. Smith, 539 U.S. 510, 521 (2003).

Consequently, neither trial nor appellate counsel rendered ineffective assistance because Franklin cannot show that his attorney performed deficiently and that he was prejudiced by the informant's inconsistent testimony.

Ground Two:

Franklin alleges that both trial and appellate counsel rendered ineffective assistance by not moving to suppress evidence he contends was seized illegally by using a confidential informant who was on probation. Franklin also alleges that the use of this evidence by the United States was a Brady violation because the prosecution failed to disclose documents showing that the state court authorized use of a

probationer as a confidential informant.[12] One of the police officers testified that the requisite authorization was obtained for using the confidential informant. Transcript of Trial Proceedings at 92 (Doc. 223). Moreover, Franklin has not shown how using a confidential informant without the state court's authorization violates his Fourth Amendment rights or that the lack of such authorization shows that he is factually innocent of the charged offense. Consequently, Franklin cannot show that either trial or appellate counsel rendered ineffective assistance.

Ground Three:

Franklin alleges that both trial and appellate counsel rendered ineffective assistance by not objecting when the prosecutor questioned him about his knowledge of the illegal uses for items seized during the search of his home, specifically scales and a "Pyrex" pot. But Franklin deflected the prosecutor's insinuations and denied any knowledge of the items. Transcript of Trial Proceedings at 273-75 (Doc. 224). Franklin presents no authority showing that the questions were objectionable. Consequently, Franklin cannot show that either trial or appellate counsel rendered ineffective assistance.

Ground Four:

Franklin alleges (1) that both trial and appellate counsel rendered ineffective assistance regarding the prosecution's failure to disclose the photographs shown to the confidential informant to identify Franklin and (2) that the prosecution's failure to

---

[12] Brady v. Maryland, 373 U.S. 83 (1963). Franklin forfeited this substantive claim because he could have raised the claim on direct appeal. See footnote 11.

disclose the photographs violated the requirements of both Brady and the court's discovery order. Even assuming that the failure to disclose the photographs violated the pretrial discovery order, Franklin has not shown that he was prejudiced by the nondisclosure. The existence of the photographic identification was disclosed during the first trial. Transcript of Trial Proceedings at 58, vol. 1 (Doc. 119). As a consequence, Franklin was not surprised during the second trial when the confidential informant testified to identifying Franklin from booking photographs.

The Brady rule requires that the prosecution disclose evidence that is both favorable to the defendant and material to either guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). The purpose of this rule is "to ensure that a miscarriage of justice does not occur." United States v. Bagley, 473 U.S. 667, 675 (1985). The focus is on whether the defendant received a fair trial despite the undisclosed evidence.

> [S]uppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial. Consistent with "our overriding concern with the justice of the finding of guilt," United States v. Agurs, 427 U.S. [97],112 [1976], a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.

United States v. Bagley, 473 U.S. at 678. Franklin's guilt is unquestionable. Because the photographs were not material to either guilt or punishment and the failure to produce the photographs had no effect on the trial, Franklin cannot show that he was prejudiced by the nondisclosure.

Ground Five:

Franklin alleges that both trial and appellate counsel rendered ineffective assistance for failing to argue a variance between the indictment and the verdict because the indictment charged conspiracy to possess with the intent to distribute both cocaine (powder) and cocaine base (crack) whereas the verdict form required the jurors return specific findings for only cocaine base (crack) and not also cocaine (powder). Franklin misunderstands the meaning of a " fatal variance" between an indictment and the proof at trial. Count one charged Franklin with two conspiracies in the conjunctive, both crack <u>and</u> powder cocaine. No variance occurred because the prosecution presented evidence of both conspiracies but for some unexplained reason the verdict form (Doc. 188) asked the jurors to determine Franklin's guilt on only the crack cocaine conspiracy and not also the powder cocaine conspiracy. <u>See</u>, <u>United States v. Miller</u>, 471 U.S. 130 (1985) ("[A] number of longstanding doctrines of criminal procedure are premised on the notion that each offense whose elements are fully set out in an indictment can independently sustain a conviction. <u>See</u>, <u>e.g.</u>, <u>Turner v. United States</u>, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970) ("[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged"); <u>Crain v. United States</u>, 162 U.S. 625, 634-636, 16 S.Ct. 952, 954-956, 40 L.Ed. 1097 (1896) (indictment count that alleges in the conjunctive a number of means of committing a crime can support a conviction if any of the alleged means are proved) . . . ."). The indictment notified Franklin that he must defend against two conspiracy charges. The

- 14 -

verdict form authorized the jury to convict Franklin of one conspiracy. Franklin's conviction is not based on a fatal variance between the charged offense and the evidence proven at trial.

Ground Six:

Franklin alleges that appellate counsel rendered ineffective assistance by asserting the wrong argument regarding the denial of his first motion for mistrial. Franklin contends that appellate counsel should have argued for a mistrial based on Rule 403, Federal Rules of Evidence, rather than Rule 404. The circuit court rejected Franklin's Rule 404 argument as follows:

> Franklin also claims that the district court erred in denying his motion for mistrial when the government solicited an SPPD detective's testimony that cocaine powder was found in the pocket of a jacket hanging in an upstairs bedroom. In the first trial, this cocaine evidence had been used to support Count Three. Because the first jury acquitted the defendants of that charge, the district court dismissed the charge in the second trial. Franklin contends that this evidence could not be used to prove the other counts in the second trial.
>
> "When a curative instruction has been given to address some improper and prejudicial evidence, we will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." Harriston, 329 F.3d at 787 n.4. To address the testimony about cocaine in the jacket pocket, the district court gave the jury a curative instruction advising them that the defendants were on trial only for the crime charged in the second superseding indictment and that the district court was striking the challenged testimony because it did not relate to the matter currently before the jury. [T]he government's questioning was not so prejudicial as to be incurable by the district court's instructions, particularly in light of the abundance of independent evidence against Franklin. Therefore, we discern no error in the district court's denial of Franklin's motions for mistrial.

Order at 11-13 (Doc. 241). Franklin cannot meet the prejudice requirement of the

Strickland test.  Rule 403 provides for the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."  The circuit court stated that "the government's questioning was not so prejudicial as to be incurable by the district court's instructions, particularly in light of the abundance of independent evidence against Franklin."  Consequently, appellate counsel's failure to argue Rule 403 was not prejudicial.

Accordingly, the motions to vacate pursuant to 28 U.S.C. § 2255 in both 8:05-cv-380-T-23TBM (Doc. 9) and 8:05-cv-580-T-23TBM (Doc. 1) are **DENIED**.  The clerk shall enter a judgment against Thomas and Franklin and close these cases.

ORDERED in Tampa, Florida, on March 31, 2009.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE